All rise. State of Illinois District Commissioned Division of the California County Session. Honorable Justice William E. O'Neill is presiding. Please be seated. Thank you. Will the clerk please call the first case. 317-0725 George Campbell versus Central Freight Lines. Counsel, you may proceed. Good morning, your honors. May it please the court. Counsel, my name is Ashley Marcos. I am the petitioner on Mr. George Campbell. And the issue before us this morning is this appeals around the commission's failure to consider the merits of an employee's claim as it was alleged, that of a repetitive trauma, with a manifestation date of February 19, 2010. And that in reaching that decision, the commission failed to follow the legal analysis set forth by the Supreme Court over three decades ago in its state when considering the merits of a repetitive trauma claim. And thus, as an error of law, is subject to a criminal review. If we turn to the initial decision by the Supreme Court that of Peoria, that carves out that the act does include not only specific injuries, but those arriving from repetitive or cumulative trauma. So you were all in on the repetitive trauma, not this fall that she had? Or were you alleging both? What was your theory of recovery? The sole theory of recovery that was ever been alleged in this case was that of repetitive trauma. I believe that counsel said in his brief that there were alternative applications filed, which is not the case here. Petitioner has only ever alleged injuries sustained over time as the result of repetitive trauma. So the surgeries had nothing to do with this fall that she sustained? That wasn't your theory? Pardon? Nothing to do with this fall that happened? There was a surveillance video? How does that enter into it? I'm not sure to what you're referring to. I see what you're saying. And so the court's been very clear and understandably so that in cases of repetitive trauma, they're not traceable to a specific date of accident. And that the date of accident on the application is the date of the manifestation of the injury. In other words, the date that a reasonable person or person... Why does it make a difference? Why does it make a difference? Are we really, I mean, are we talking about a work-related injury? Certainly. And they can be traumatic, they can be repetitive? Certainly. But when considering the merits of an event that happens in a single moment of time, let's say an employee falls off a ladder, the kind of considerations when considering whether or not that's work-related are going to look different than when we're talking about an injury that occupies this kind of mobulous area between a single accident and occupational disease when it occurs gradually over time. Well, there's no occupational disease here, is there? No. It's not under the Occupational Disease Act. But in terms of where repetitive traumas fit between the scale of a single accident and occupational disease, they occupy the space that's in between. And the issues that arise out of this case are exactly those that were surmised as important, for Duran being that inconsistent testimony, for example, cannot be held against the petitioner for improperly labeling his condition. The standard is not one a reasonable physician would have known. This is an employee, a blue-collar worker for that matter, that has been a truck driver his entire life and has alleged to sustain injuries to his back and neck that started in January of 2010. And it was not until the event on 2-19 being recalled as the date that, while on the job, the pain was worse than it had ever been before. He did not recall it as a specific accident. So when we turn to the decision of the commission, the decision is entirely void of any evidence that they consider the merits of the claim, as the petitioner alleged, that being repetitive trauma. And, in fact, to quote verbatim the final sentence there, based on the totality of the evidence, the petitioner did not sustain an accident on February 19, 2010. The petitioner was now alleging that he sustained an accident on February 19. The petitioner was alleging that that was a date that the pain was worse than it had ever been before. And so for the court to apply an incorrect lens when considering issues such as inconsistent testimony or lack of contemporaneous complaints in the medical, the court makes very clear that in cases of repetitive trauma, by their very nature, there's not going to be an accident complained of necessarily contemporaneously in the medical. Can I ask you a question? There's going to be a relationship between the condition of Bill Dean and his work in both instances, right? Certainly, Judge. So what would the evidence be differently? The evidence would look differently as the petitioner, when discussing a gradual increase in symptoms, isn't going to necessarily have one specific event. The petitioner is alleging a multitude of job activities that led to the back and neck issues. We can see here. Would the physician's opinions be different in this case? I mean, because the commission, in their decision, did reference repetitive trauma, didn't they? I mean, at the beginning? But in the preamble to their decision, didn't they? There's no mention of repetitive trauma whatsoever. And as the Supreme Court has said, the analysis and the focus here is on a manifestation of injury date and whether or not that is proper. Counsel, at page one of the decision, it says, Petitioner's claimed accident is both traumatic and repetitive in nature. I'm sorry, Your Honor. You didn't hear that? No, I'm sorry. At page one of the decision, it says, Petitioner's claimed accident is both traumatic and repetitive in nature. It's in the findings of that section. That's correct. So we are referencing the conclusions of law as evidence of an error of law has occurred as that section, which is reduced to four paragraphs, is entirely void of any discussion as to whether or not he sustained a repetitive trauma claim, as to whether or not February 19th was the proper manifestation date. And the Supreme Court has made clear that there is a distinct analysis when considering the merits of the claims, as Petitioner has alleged. So for the commission's decision to stand, it would stand for the principle that an employee could have access to these benefits denied entirely on the basis of a claim that he never alleged. Well, what about how do you read these conclusions of law? The commission said it looked at the complete medical records of Dr. Massoud, which are devoid of any mention of the claimant injuring his low back or neck at work, either on February 19th, 2010, and I quote, or in the performance of his regular duties. Doesn't that seem to acknowledge that they're looking at it from a repetitive nature? It wasn't just focusing on February 19th. Why would they say or in the performance of his regular duties? Why would they say that? We read all four of these paragraphs to only be speaking to the merits of what happened on February 19th. And to not to try to catch the part on the technicality here, but even a generous read of this, there's no evidence that they considered anything other than whether or not the trailer was defective, which wasn't even the only job activity that he was alleged to be the cause of his symptoms. And as you're unclear, the petitioner there was the cause of his symptoms. His symptoms were alleged as repetitive exposure to excessive vibrations as the airplane seat in his truck was losing pressure, causing him to bounce back and forth. Was there a medical opinion that there was that either one did didn't happen or two, that it did happen, that it didn't contribute to his degenerative condition? Yes, as Dr. Lorenz, the orthopedic here, had opined that on cross-examination, that with a trucker, it's very common to have a fairly high level of low back and neck pain, including degenerative changes that is thought by ophthalmologists to be related to their chronic lungs sitting in vibrational exposure. And even a physician hired by the insurance company in this case admitted on cross-examination in his deposition that the main basis of his opinion was a lack of a medical proof of aggravation, but also had to admit that there was a lack of medical to show any kind of significant prior treatment. In fact, in October of 2009, just mere months before the onset of pain, as part of the certification for his position, Petitioner had to pass a CDL physical exam where he passed and had no complaints of pain prior to that whatsoever. And then we looked at the MRIs. And didn't he say in that CDL he had no lower back conditions or et cetera in his life? That is correct. And was that shown to be incorrect in the prior medical records? I think that goes to the question of what is significant and what a reasonable employee would consider as treatment. Having annual checkups and noting to your doctor that you're having spasms of back pain, Petitioner had never been referred out for any kind of expertise. He had never seen an ortho prior to this. He had an MRI, though, hadn't he? He had x-rays to his back, but in reference to those, we're talking about eight years prior to the accident. And, again, he's been a truck driver for 15 years, over two of which with this particular employer. But most importantly here, not to take us out of the facts, but, again, all of these facts need to be considered under the proper lens. And these kind of inconsistencies and the lack of contemporaneous is exactly what the Supreme Court was trying to protect Petitioners from in these kind of cases. For him to testify to one doctor that, yes, something happened this day and, no, something didn't. Well, I think we're all familiar on this Court with manifestation dates and repetitive trauma claims over the years. But the question I am asking you is with this record, with the facts in this record and with medical opinions, what specifically would a repetitive trauma analysis lead to a more favorable outcome for your client than happened here, if, indeed, you're correct and they only focused on a specific traumatic incident in February, I guess it was. Absolutely, Your Honor. Under repetitive trauma analysis, we would be looking as to whether or not February 19, 2010 is a proper manifestation date. And we know that there's a fair and flexible standard. And typically around five factors to choose from, February 19 falls under factors two and four, which are the date on which both the fact of the injury, the symptoms become more acute at work, as he noticed from pulling the door that day. And then also the date that Petitioner first informed employment, which Petitioner had testified to having a conversation with Mr. Kabbalah on the 19th. Ma'am, am I missing something? The Commission found that he didn't sustain an accident arising out of or in the course of his employment. They specifically found they relied on the trial testimony and the medical evidence, specifically findings also based on the Petitioner's lack of credibility when comparing his testimony to the medical evidence. He failed to meet his burden of proof. What did Dr. Walsh have to say? Dr. Walsh said that all the imaging studies showed changes consistent with the patient's age, but none of the studies show anything that specifically can be related to a work injury or the cervical spine or chronic injury to the lumbar spine. He diagnosed the man as degenerative changes, found positive Waddell signs. The Commission found he had no accident arising out of or in the course of.  The Commission's finding only speaks to the merits of whether or not he sustained an accident on February 19th, and in reference to Dr. Walsh's opinion. Well, I don't think that's what the Commission says. It's largely based on a lack of aggravation, but also admits a contemporary. No, the arbitrator looks through the complete medical records of Dr. Massoud, which are devoid of any mention of Petitioner injuring his low back or neck at work, either on February 19, 2010, or in the performance of his regular duties. The Petitioner was seen on February 20th, the day after the claim lifting event of February 19th, did not report any incident occurring that day. In fact, Massoud testified Petitioner never reported injuring himself on that day. They specifically found that the records are devoid of any evidence that he injured his neck performing his regular duties. In reference to his visit with Massoud on the 20th, he had been treating with Massoud for several weeks in January prior to the visit on the 20th, and had already discussed back pain. And as the event on the 19th is not alleged as an accident, it's alleged as the date that he made the causal connection from A to B, that, hey, what's going on with my back has something to do with what I'm doing on the job. But you've been emphasizing that the Commission really didn't, and, you know, you have some logical appeal in your argument. They didn't address repetitive trauma allegations. But as he just pointed out, when the medical records or the decision says either on February 19th or in the performance of his regular duties, it's obviously referring to a repetitive claim. And why would they have the or in the repetitive duties if they weren't considering it? They would just simply say that he didn't prove he had a compensable accident on February 19th, 2010. You haven't explained why that language is in there, though. Understanding what Your Honor, and respectfully, I would say that the mere addition of that conjunction there is not sufficient evidence to say that they engaged in proper analysis. Well, why would you say they were? There is no requirement that he sustained an accident on the 19th. But give us an alternative reasonable theory of why that would be in there if it wasn't referring to the repetitive nature of his work. Why would they bother to put that in there if they didn't consider it? I would say at best it's a reference to the application where he alleges multiple job activities. And so it covers the fact that he's not just alleging a single door, that it's also exposure to excessive vibration. But then if we are to move to the facts in that sense, I'd say that that's against the manifest weight of the evidence, as all three treating positions in this case agree that he gave consistent testimony, which was that he noticed backhands starting in January of 2010 that got increasingly worse. Well, that's a good point. You could argue that the number of witnesses lining up in favor of the claimant outweighs the one witness, Walsh, but that isn't the way it works, as you know. You look at the nature. The commission is certainly within their province to reject the three and go with Walsh, aren't they? They certainly are. But, again, all of the commission's findings are only with respect to the merits of what happened surrounding February 19th. And they made pretty clear that they're denying the petitioner's claim for lack of reporting a specific accident the next day to the suit or telling Dr. LaReynolds on another day that, yes, something did happen that day. And the petitioner improperly labeling testimony was exactly what the Supreme Court envisioned with these kind of claims. So for this decision to stand, it leaves the petitioner and any future employee in a nearly impossible position when it comes to proving repetitive trauma claim. If they overly assert what happened on the day that they connected their ongoing gradual injuries to work, then they're put in a position of having to prove that all of these injuries are related to what happened on the single day, when that isn't exactly what they're saying. They're saying that there is a multitude of job activities occurring gradually over the course of time. And mere logic even dictates, aside from the rules set out by the court, that when considering the merits of these two claims, we have to engage in a different analysis. Well, does Massoud, in the language just quoted by Justice Hoffman, does Massoud support your case or not, repetitive trauma? We believe Mr. Concernier supports our case for repetitive trauma, as the letters authored prior to the petitioner filing his application in March made clear that he was aware of what the job duties of the petitioner were, not to mention that there is a reasonable inference from him being a treated physician for 15 years that he would also be aware. But he explicitly laid those out in the letter, and then at his deposition went on to as is evidenced by the CDL, as is evidenced by, you know, findings on the prior x-rays, that the excessive exposure to vibrations and the repetitive lifting of the doors he opined was a cause of his current condition. As did Dr. Lorenzo de Orto, and as did Dr. Diehl, the later treated physician, when he moved. Well, but Wolf said that his subjective complaints were out of proportion to any objective abnormality, and most likely than not were unrelated to a work injury. Why is there a de novo review in this case? There's a de novo review, as we are discussing the facts. We're discussing the facts under the lens that we wish the arbitrator and subsequently the commission might consider that, which is how the act applies to the facts, how the act in terms of the merits of a repetitive trauma claim. This witness is saying there is no relationship between this man's work and his condition. That's exactly what Dr. Wolf said, unrelated to a work injury. No evidence in the medical records of the claimant suffered an aggravation or acceleration of a preexisting injury. The MRI findings were degenerative, opining that there was no evidence that his current subjective claims were causally related to the work. And as we know, the case law supports not only repetitive injuries but aggravations of preexisting conditions. He said it didn't happen. It didn't aggravate anything. Nothing in his work aggravated it. I don't understand where you come up with the conclusion this is a de novo review. The commission found and specifically found that he failed to prove an accident. Accident. That means he failed to prove repetitive trauma. In theory it was repetitive trauma. That is the accident. He failed to prove it. And Walsh supports that. I would say that Walsh's opinion, as not the treating physician, needs to be considered or weighed against the three treating physicians that do have the same opinion in this case. You know that we have case after case after case that says if the commission chooses to reject the testimony of the treater and accept the testimony of the expert, that's their privilege. Certainly. And I would say that by this discussion, we're almost putting the cart before the horse here. You'll have time in reply.  Okay. Thank you for being very generous this morning. I've been generous. I'm generous this morning. Next time, sit at the council table. You and I, we've all worked hard to get our law degrees to be admitted to the bar. That means we're able to sit at the council table. It's just a thing we should do. We don't want you to be shy in here. Yeah. Okay. You may proceed. Thank you. May it please the Court, we have a plea on behalf of the Paladino Central Freight Lines. Oops. That's why you were sitting in the back there. That's why I was sitting in the back, yes. Obviously, the Paladino Central Freight Lines respectfully request that this Court hold the decision and the findings in their entirety of Arbitrator Granada, a unanimous commission panel, and Judge Anderson. The reasons, therefore, are an altitude. In the application for adjustment of claim, Petitioner elipsed an accident date. This is where it goes in February 19, 2010. Not on or about February 19, 2010. Not a manifestation date of February 19, 2010. But a date of accident, February 19, 2010. One line below that, failed match for competitive trauma. Both theories were asserted at arbitration based on readings and Petitioner's own testimony. Petitioner repeatedly testified to pre-existing back injuries brought on by job duties and work while working for UPS as far back as 2002. UPS is not my client, and the statute of limitations on that claim would have expired in 2005. Petitioner admitted, even while working for UPS in 2002, he knew his back complaints were related to his job duties because the company saw the company doctor who prescribed and had him undergo a thorough columbar MRI and also prescribed physical therapy, which Petitioner wrote through. None of those facts exclude the notion that he could have aggravated the pre-existing injury through repetitive trauma while working for your client. This is true. And I bring this testimony into light only because we did not allege there were alternative applications, as was stated previously. Our argument is that both theories of recovery were alleged, in the pleadings and at arbitration. And, as the Court discussed earlier, arbitrator or not, I can commission, were charged with deciding, did an accident occur that arose out of and in the course of Petitioner's employment by response? Arbitrator or not have found no. He found Petitioner did not meet his burden of proof by the promise of evidence. The unanimous commission panel upheld that, and Judge Anderson upheld that. Perhaps your point is more subtle. She seems to be arguing, she maybe doesn't parse words of what you're saying here on that point, but she's saying that in her interpretation of the case law, the commission should have specifically addressed repetitive trauma allegations specifically, and she says that the findings are lacking. They did not do that. It should be remanded to specifically opine on the repetitive nature of the allegations. I disagree. I leave the Court to its experience in presiding over cases like this. Arbitrator or not, I've had the benefit of listing all the witness testimony. You've read the transcript. The Petitioner testified over and over again. His back problem started in 2002. In 2009, he had a series of back issues. In 2009, he had a series of back issues. And, oh, by the way, on February 19, 2010, he had a specific trauma while lifting a broken door. What you're saying, by the way, the commission doesn't have to specifically say, with regard to the allegations of repetitive trauma, we specifically find in response to that theory, they don't need to be that specific. Is that what you're saying? I know of no case that tells the commission or the arbitrator that they have to be that specific. I think the arbitrator did not review the evidence in its entirety, as was his job, the evidence being the medical records, the testimony, preexisting medical records, Petitioner's testimony at trial that he suffered from a history of preexisting back issues and that he suffered a specific trauma on February 19, 2010. That was the Petitioner's own testimony. In fact, he testified he told Tom Cavalli on that date of a specific loss. That was disputed by Tom, but nonetheless, that's what Petitioner testified to. So at arbitration, Petitioner was, whether he realized it or not, pursuing alternative theories of recovery, repetitive trauma and or a specific trauma. The judge, the arbitrator, was charged with determining whether Petitioner established by a preponderance of evidence whether he established an accident. He found he did not. A unanimous commission panel affirmed. Judge Anderson affirmed. There were no errors of the law in this matter. I note no case law, again, Your Honor, which states that an arbitrator must rule out, specifically use the word manifestation date, specifically use the word repetitive trauma. And as you pointed out on page 8 of his decision, basically he did do so. The records are devoid of any mention of Petitioner entering his mobile or network on either a 2-19-10 specific alleged date or in the performance of his regular duties for my client, Central Freight Lines. They all found the burden of was not met with regard to establishing an accident. That's why we believe a unanimous way standard applies in this case. Let me ask you this. And she, I think, sort of alluded to it. What is the evidence, then, that you've said? As you know, to be compensable, a work-related accident doesn't have to be the sole cause or even the principal cause of the condition of ill-being. It could be an aggravation of a preexisting condition. I would agree with that interpretation. So how do you respond to that argument? My response is that these issues were disputed. All the factual issues were in dispute. All the factual, the disputed factual issues were presented to Arbitrator Granada, both with regard to Petitioner's testimony, the deposition testimony, the preexisting medical records. And Arbitrator Granada found Petitioner, you did not meet your burden appropriately. Does Walsh specifically address that? Does Walsh address the changes and the aggravation? Does Walsh talk about that at all? I believe he did address it briefly in stating that the condition of ill-being at the time you saw Petitioner was age-appropriate. I'm not sure if those were the exact words, but I believe that's what he testified to in the transcript and in his reports. And I believe a number of other doctors testified to that as well. In short, and again I'll be brief, and I hope it's not too brief, but again, with regard to Petitioner's testimony, whether you adopt a manifest weight standard or a de novo standard, and we believe the manifest weight standard applies, it's all the facts, all the underlying facts were in dispute. I understand Duran, and I've argued Duran on several occasions. I understand Purer as well. Frankly, in this case, based on Petitioner's own testimony and his medical records dating back to 2002 and the testimony of Dr. Massoud, who treated Petitioner as far back as 2002, the manifestation date occurred sometime in 2002 when Petitioner alleged a back injury and told UPS. UPS sent him to the quote-unquote company doctor. The company doctor prescribed physical therapy and a thoracolumbar MRI. Certainly, if he went to the company doctor, Mr. Campbell was aware that his current condition had some causal relationship to his job at that time. If there is a manifestation date, it was in 2002. And for these reasons, again, I would respectfully request that this Court uphold the findings and decisions of the arbitrator, the unanimous commission panel, and Judge Anderson. Thank you, counsel. Thank you. Counsel may reply. Thank you, Your Honors. I would just simply like to back the Court up here for a moment and make it very clear what we're asking here, which is simply to have the opportunity for the employee's claim to be heard as it was alleged, that of a repetitive trauma. And when we look to the decision, all four paragraphs contained within the conclusion of law speak to the merits of whether or not an accident occurred on February 19th. Even a generous read of the fact or the legal conclusions contained within that decision only speak to whether or not an accident, a single event, occurred on February 19th. There is no discussion as to whether or not 2002 is a proper manifestation date. We're simply asking for this to be remanded and considered under the proper legal analysis as set forth by the Supreme Court. Some kind of a discussion as to whether or not a reasonable employee would have known on the 19th that what he's alleging, his injuries, back and neck pain, were related to a variety of job duties, and that did not occur here. And if this decision were to stand, it would stand for the principle that it cuts entirely against the purpose of the act, which is to say that an employee can be denied a claim on the basis of something that is simply never alleged. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.